BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
ELAINE A. RYAN (*To be Admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (CA SBN 203111)
LINDSEY M. GOMEZ-GRAY (*To be Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone: (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Manfred P. Muecke (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone: (619) 756-7748

STEWART M. WELTMAN, LLC
 Stewart M. Weltman (*To be Admitted Pro Hac Vice*)
53 W. Jackson Suite 364
Chicago, IL 60604
sweltman@weltmanlawfirm.com
Telephone: (312) 588-5033
(Of Counsel Levin Fishbein Sedran & Berman)

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASHLEY FRANZ, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BEIERSDORF, INC., a Delaware corporation and BEIERSDORF NORTH AMERICA, INC., a Delaware corporation,<br><br>Defendants. | Case No.: **'14CV2241 LAB RBB**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; and<br>2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Ashley Franz brings this action on behalf of herself and all others similarly situated against Defendants Beiersdorf, Inc. and Beiersdorf North America, Inc. and states:

**NATURE OF ACTION**

1. Defendants manufacture, market, sell and distribute NIVEA Skin Firming Hydration Body Lotion with CoQ10 Plus formulated with Co-Enzyme Q10 Complex, Hydra-IQ and glycerin ("NIVEA CoQ10 Lotion"). On the front of each and every Nivea CoQ10 Lotion bottle, where consumers cannot miss it, Defendants represent that the Product "improves skin firmness within 2 weeks".[1] Defendants reaffirm on the back of every bottle that the Product is "proven to firm and tighten skin's surface in as little as two weeks" (collectively, the "skin firming representations").

2. In truth, NIVEA CoQ10 Lotion is not proven to improve skin firmness within or in as little as two weeks or ever. The only ingredient contained in the Product capable of firming and tightening the skin is CoQ10.[2] A High Performance Liquid Chromatography ("HPLC") analysis capable of detecting substances present in concentrations as little as one part per million, a thin layer chromatography ("TLC") analysis and a mass spectral analysis ("MSA") of the Product have all shown the Product contains woefully insufficient amounts of CoQ10 to provide any skin firming benefit. And, the trace amounts of CoQ10 in the Product have not been reduced to a particle size capable of readily penetrating the skin's stratum corneum surface reducing the odds that what little CoQ10 is in the Product actually reaches beneath the epidermis to the dermal layer of skin responsible for much of

---

[1] Recently, Defendants changed the front label from "improves skin firmness within 2 weeks" to "improves skin firmness in as little as two weeks." Both of these representations are false, misleading and reasonably likely to deceive consumers.
[2] Hydra-IQ, glycerin and the other ingredients in the Product are skin moisturizers and softeners.

the skin's tensile strength. Defendants' skin firming representations are false, misleading and reasonably likely to deceive the public.

3. As a result of Defendants' deceptive skin firming representations, consumers – including Plaintiff and members of the proposed Class – have been deceived into purchasing what they believed to be a Product "proven" to firm skin within or in as little as 2 weeks when, in fact, the trace amounts of oversized CoQ10 particles in the Product are incapable of firming and tightening the skin "within two weeks", or "in as little as two weeks" or ever. Plaintiff and Class members paid a substantial (approximately $4.00) price premium for the skin firming Nivea CoQ10 Lotion over Defendants' other Hydra-IQ and glycerin lotions that do not claim to improve skin firmness within or in as little as 2 weeks.

4. Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased NIVEA CoQ10 Lotion to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased NIVEA CoQ10 Lotion. Based on violations of California's unfair competition laws (detailed below), Plaintiff seeks injunctive and restitutionary relief for consumers who purchased the Product.

**JURISDICTION AND VENUE**

5. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Class members are citizens of a state different from Defendants.

6. This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do business in California. Defendants have marketed, promoted, distributed, and sold NIVEA CoQ10 Lotion in California and Defendants have sufficient minimum contacts with this State and/or sufficiently

avail themselves of the markets in this State through their promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

7.   Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

## PARTIES

8.   Plaintiff Ashley Franz is a citizen of California and resides in San Diego, California.  In or around 2012, Plaintiff purchased NIVEA CoQ10 Lotion from a third-party retailer in San Diego, California.  Prior to purchasing the Product, Plaintiff was exposed to and saw Defendants' skin firming representations by reading the NIVEA CoQ10 Lotion label.  Plaintiff purchased NIVEA CoQ10 Lotion in reliance on Defendants' skin firming representations.  She paid a substantial premium for the NIVEA CoQ10 Lotion.  The NIVEA CoQ10 Lotion Plaintiff purchased did not firm or tighten her skin within 2 weeks as represented, or ever.  As a result, Plaintiff suffered injury in fact and lost money. If Defendants were to remove the skin firming representations, such that the Product was priced according to its true value, Plaintiff may purchase the Product in the future to use as a skin moisturizer but not skin firmer or tightener.

9.   Defendant Beiersdorf, Inc. is a Delaware corporation with its principal place of business in Wilton, Connecticut.  Beiersdorf, Inc. manufactures, distributes, markets and sells NIVEA CoQ10 Lotion and created the deceptive skin firming representations, which it caused to be disseminated to consumers nationwide, including in California.

10.   Defendant Beiersdorf North America, Inc. is a Delaware corporation

- 4 -

with its principal place of business in Wilton, Connecticut. Beiersdorf North America, Inc. manufactures, distributes, markets and sells NIVEA CoQ10 Lotion and created the deceptive skin firming representations, which it caused to be disseminated to consumers nationwide, including in California.

11. Plaintiff is informed and believes, and thus alleges, that at all times herein mentioned, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendant and, in doing the things alleged herein, was acting within the course and scope of such agency, employment, representation, on behalf of such partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendant

## FACTUAL ALLEGATIONS

*NIVEA CoQ10 Lotion*

12. Defendants manufacture, market and sell the Nivea line of skin and body care products. This lawsuit concerns one of those products – NIVEA Skin Firming Hydration Body Lotion with CoQ10 Plus. Defendants launched NIVEA CoQ10 Lotion in 2010. NIVEA CoQ10 Lotion is sold online and in virtually every major food, drug, and mass retail outlet in the country.

13. Since the Product's launch, Defendants have consistently conveyed the message to consumers throughout the United States, including California, that their NIVEA CoQ10 Lotion is "proven" to "improve skin firmness within two weeks." It is not. Defendants' skin firming representations are false, misleading and deceptive.

14. The skin firming ingredient in Nivea CoQ10 Lotion is Co-Enzyme Q10. Co-Enzyme Q10, also known as ubiquinone or CoQ10, is a vitamin-like substance with antioxidant properties. CoQ10 is a deep orange color.

15. To be able to provide skin firming benefits, CoQ10 must penetrate the

skin's stratum corneum surface, the outermost layer of the epidermis, which acts as an effective barrier to most compounds, and reach the living layers of epidermis and the second layer of the skin, the dermis. The dermis is the fibrous-connective tissue or supportive layer of the skin and is responsible for much of the skin's tensile strength. Simply adding CoQ10 in its native (raw) state to a cream or lotion and applying it topically results in minute to no absorption into the skin cells. To ensure penetration into the living layers of the epidermis and dermis, the CoQ10 particles should be reduced in size by, for example, using nanoparticle technology. Once properly processed, a therapeutically appropriate level of administration is required to have any meaningful skin firming effect.

16. Reducing the CoQ10 in the Product to nanoparticle size is a very expensive process and would be cost prohibitive if employed in this Product. But even if nanotechnology has been employed – which is unlikely – the trace amounts of CoQ10 in the Product cannot provide firmer more toned skin within or in as little as two weeks or ever.

*NIVEA CoQ10 Lotion Is Not Proven to Firm or Tighten the Skin In as Little as Two Weeks or Ever*

17. The NIVEA CoQ10 bottle states that the Product is "Proven to firm and tighten the skin's surface in as little as two weeks." By prefacing the skin firming representations with the word "proven", Defendants are representing to consumers that credible scientific evidence supports the skin firming representations. In fact, scientific analyses have shown that the Product contains insufficient amounts of CoQ10 to provide skin firming benefits in as little as two weeks, or ever, and the trace amounts of CoQ10 particles in the Product have not been reduced in size to facilitate penetration into the dermal layer of the skin.

18. Three sensitive techniques in modern analytical chemistry – HPLC, TLC and MSA – found no or only trace amounts of CoQ10 in the Product. The

HPLC analyses used UV detection, which can detect substances in concentrations as little as one part per million. The Product contained just over one part per million of CoQ10, a de minimis amount.

19. MSA, which looks for the presence of CoQ10 according to molecular weight, confirmed that only a trace amount of the ingredient is present in the Product.

20. And, a TLC analysis comparing a sample of the lotion extracted with an organic solvent in which CoQ10 is soluble with an authentic sample on a TLC silica gel plate failed to detect the presence of any CoQ10.

21. Thus, no less than three separate chemical analyses performed on the Product consistently showed trace amounts, at most, of CoQ10 in the Product. Further indicative of the trace amount of CoQ10 in the Product is its bright white color without a hint of CoQ10's deep orange coloring.

22. The trace amount of CoQ10 in the Product is incapable of providing skin firming benefits within or in as little as two weeks as represented, or ever, particularly since the CoQ10 particles are not sufficiently processed to make them readily capable of penetrating the skin.

23. Scientific studies that have reported skin firming benefits from CoQ10 used preparations containing much higher concentrations of CoQ10 than are in the Product, with CoQ10 reduced to nanoparticle size. Even then the reported positive effects at this much higher doses occurred well after two weeks and in some instances after months of continued use – not within two weeks of use as Defendants represent.

*The Impact of Defendants' Wrongful Conduct*

24. Even though NIVEA CoQ10 Lotion contains insufficient amounts of insufficiently processed CoQ10 to firm and tighten the skin's surface, Defendants continue to unequivocally convey through their advertising and labeling one

uniform message: NIVEA CoQ10 Lotion is proven to provide firmer more toned skin within or in as little as two weeks.

25. Each and every consumer who purchases NIVEA CoQ10 Lotion is exposed to Defendants' deceptive skin firming representations because they appear prominently and conspicuously, and almost exclusively on the front of each bottle as follows:



26. The back panel of each NIVEA CoQ10 Lotion repeats the deceptive skin firming representations, claiming that the Product is "proven to firm and tighten skin's surface in as little as two weeks":[3]

---

[3] The former label used during most of the class period is attached as Exhibit A.



27.     As the manufacturer and/or distributor of NIVEA CoQ10 Lotion, Defendants possess specialized knowledge regarding the content and effects of the ingredients contained in NIVEA CoQ10 Lotion and are in a superior position to learn of the effects—and have learned of the effects—NIVEA CoQ10 Lotion has on consumers.

28.     Specifically, Defendants knew or should have known, but failed to disclose that NIVEA CoQ10 Lotion contains de minimis amounts of CoQ10 and the trace amounts are unlikely to penetrate the skin's surface such that the Product

cannot provide firmer more toned skin within or in as little as two weeks or ever.

29. Plaintiff and Class members have been and will continue to be deceived or misled by Defendants' deceptive skin firming representations. Plaintiff purchased and used the Product during the Class period and in doing so, read and considered the NIVEA CoQ10 Lotion labeling and packaging and based her decision to buy the Product on the skin firming representations. Defendants' skin firming representations were a material factor influencing Plaintiff's decision to purchase and use the Product. Plaintiff would not have purchased the Product had she known that Defendants' skin firming representations were false and misleading.

30. As a result, Plaintiff and the Class members have been damaged in their purchases of the Product and have been deceived into purchasing a Product that they believed, based on Defendants' representations, would firm and tone skin within two weeks, when, in fact, it is incapable of firming and toning skin.

31. Based upon the purported skin firming representations conveyed in their marketing and advertising campaign, Defendants are able to price NIVEA CoQ10 Lotion at a substantial multi-dollar premium over Defendants' other Hydra-IQ and glycerin lotions that do not make the deceptive skin firming representations.[4]

32. Defendants have reaped enormous profits from their false marketing and sale of NIVEA CoQ10 Lotion.

**CLASS DEFINITION AND ALLEGATIONS**

33. Plaintiff brings this action on behalf of herself and all other similarly situated California consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

---

[4] For example, a 16.9 ounce bottle of Nivea CoQ10 Lotion retails for $10.79, while 16.9 ounce bottles of Nivea with Hydra-1Q Plus Almond Oil, Nivea with Hydra-1Q Plus Shea Butter, Nivea with Hydra-1Q plus B5 and Nivea with Hydra-1Q Plus Cocoa Butter and Vitamin E retail for $6.79 at Walgreens on August 17, 2014.

- 10 -

**Multi-State Class Action**
All consumers who, within the applicable statute of limitations period, purchased NIVEA CoQ10 Lotion in California and states with similar laws.[5]

Excluded from this Class are Defendants and their officers, directors and employees and those who purchased NIVEA CoQ10 Lotion for the purpose of resale.

34. In the alternative, Plaintiff seeks certification of the following class:

**California-Only Class**
All consumers who, within the applicable statute of limitations period, purchased NIVEA CoQ10 Lotion in California.

Excluded from this Class are Defendants and their officers, directors and employees and those who purchased NIVEA CoQ10 Lotion for the purpose of resale.

35. *Numerosity*. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of NIVEA CoQ10 Lotion who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

36. ***Existence and Predominance of Common Questions of Law and Fact***. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

---

[5] While discovery may alter the following, Plaintiff preliminarily avers that Defendants violated the laws prohibiting unfair and deceptive trade practices of the states and territories wherein Class members reside, including: Cal. Bus. & Prof. Code §17200 et seq.; California Civil Code §1750 et seq.; Fla. Stat. §501.201 et seq.; Fla. Stat. §§817.06; 815 Ill. Comp. Stat. 502/1, et seq.; Mass. Gen. Laws ch.93A et seq.; Mich. Stat. §445.901 et seq.; Minn. Stat. §8.31 et seq.; Missouri Stat. §407.010 et seq.; N.J. Rev. Stat. §56:8-1 et seq.; N.Y. Gen. Bus. Law §349 et seq.; and Wash. Rev. Code. §19.86.010 et seq.

(a) whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(b) whether Defendants' alleged conduct violates public policy;

(c) whether the alleged conduct constitutes violations of the laws asserted;

(d) whether Defendants engaged in false or misleading advertising; and

(e) whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

37. ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Defendants' deceptive skin firming representations that accompanied each and every bottle of NIVEA CoQ10 Lotion. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

38. ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

39. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such

individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

40. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiff and Class members.

41. Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

42. Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

**COUNT I**
**Violation of Business & Professions Code §17200, *et seq.***

43. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

44. Plaintiff brings this claim individually and on behalf of the Class.

45. As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct because she purchased NIVEA

1 CoQ10 Lotion in reliance on Defendants' skin firming representations, but did not receive a Product that improves skin's firmness within or in as little as two weeks, or ever.

46. The Unfair Competition Law, Business & Professions Code §17200, *et seq*. ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.

47. In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the skin firming representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) and Business & Professions Code §§17200, et seq., 17500, et seq., and the common law. Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

48. In the course of conducting business, Defendants committed "unfair" business practices by, *inter alia*, making the skin firming representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts regarding the NIVEA CoQ10 Lotion in their advertising campaign, including the Product's packaging, as set forth more fully herein. There is no societal benefit from false advertising, only harm. Plaintiff and other Class members paid for a proven effective fast acting skin firming Product, which they did not receive. While Plaintiff and Class members were harmed, Defendants were unjustly enriched by their false representations and omissions. Because the utility of Defendants' conduct (zero) is outweighed by the gravity of the harm Plaintiff and Class members suffered, Defendants' conduct is "unfair" having offended an established public policy. Further, Defendants engaged in immoral, unethical,

oppressive, and unscrupulous activities that are substantially injurious to consumers.

49. Further, as stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth–in–advertising laws resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, et seq.

50. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

51. Business & Professions Code §17200, et seq., also prohibits any "fraudulent business act or practice."

52. In the course of conducting business, Defendants committed "fraudulent business act or practices" by, *inter alia*, making the skin firming representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts regarding the NIVEA CoQ10 Lotion in their advertising campaign, including the Product's packaging, as set forth more fully herein.

53. Defendants misrepresented on each and every Product package that the Product is "proven" to "improve[] skin firmness within 2 weeks" when, in fact, the Product contains insufficient amounts of oversized CoQ10 particles to provide skin firming benefits within or in as little as two weeks or ever.

54. Defendants' actions, claims, omissions and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

55. Plaintiff and other members of the Class have in fact been deceived as

a result of their reliance on Defendants' material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased Defendants' NIVEA CoQ10 Lotion. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

56. Defendants knew, or should have known, that their material representations and omissions would be likely to deceive the consuming public and result in consumers purchasing Nivea CoQ10 Lotion and, indeed, intended to deceive consumers.

57. As a result of their deception, Defendants have been able to reap unjust revenue and profit.

58. Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate

59. Plaintiff, on behalf of herself, all others similarly situated, and the general public, seeks restitution of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT II
### Violations of the Consumers Legal Remedies Act –
### Civil Code §1750 *et seq.*

60. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

61. Plaintiff brings this claim individually and on behalf of the Class.

62. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act") and similar laws in other states.

63. Plaintiff is a consumer as defined by California Civil Code §1761(d). Defendants' NIVEA CoQ10 Lotion is a "good" within the meaning of the Act.

64. Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of NIVEA CoQ10 Lotion:

>   (5) Representing that [NIVEA CoQ10 Lotion has] . . . approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

\*   \*   \*

>   (7) Representing that [NIVEA CoQ10 Lotion is] of a particular standard, quality or grade . . . if [it is] of another.

\*   \*   \*

>   (9) Advertising goods . . . with intent not to sell them as advertised.

\*   \*   \*

>   (16) Representing that [NIVEA CoQ10 Lotion has] been supplied in accordance with a previous representation when [it has] not.

65. Defendants violated the Act by representing and failing to disclose material facts on the NIVEA CoQ10 Lotion labeling and packaging and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

66. Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

67. Pursuant to §1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.  Copies of the letters are attached hereto as Exhibit B.

68. If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

69. Defendants' conduct is fraudulent, wanton and malicious.

70. Pursuant to §1780(d) of the Act, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in the proper forum.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Class as requested herein;

B. Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

C. Awarding injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein;

D. Ordering Defendants to engage in a corrective advertising campaign;

E. Awarding attorneys' fees and costs; and

F. Providing such further relief as may be just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated: September 22, 2014

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

 /s/Patricia N. Syverson
Elaine A. Ryan (*To be Admitted Pro Hac Vice*)
Patricia N. Syverson (203111)
Lindsey M. Gomez-Gray (*To be Admitted Pro Hac Vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone: (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Manfred P. Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone: (619) 756-7748

STEWART M. WELTMAN, LLC
Stewart M. Weltman (*To be Admitted Pro Hac Vice*)
53 W. Jackson Suite 364
Chicago, IL 60604
sweltman@weltmanlawfirm.com
Telephone: (312) 588-5033
(Of Counsel Levin Fishbein Sedran & Berman)

Attorneys for Plaintiff