Alycia A. Degen (SBN 211350)
adegen@sidley.com
Nisha Chandran (SBN 325345)
nchandran@sidley.com
SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Kara L. McCall (*Pro Hac Vice*)
kmccall@sidley.com
Elizabeth M. Chiarello (*Pro Hac Vice*)
echiarello@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendant Beiersdorf, Inc.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIE SOMERS, On Behalf of Herself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>BEIERSDORF, INC. a Delaware Corporation,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:14-cv-02241-LAB-AGS<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Larry A. Burns<br><br>Date:   January 27, 2020<br>Time:   11:30 AM<br>Place:  Courtroom 14A<br>*Oral Argument Requested |

# **TABLE OF CONTENTS**

**Page**

FACTUAL BACKGROUND.................................................................1

PROCEDURAL BACKGROUND .......................................................3

I.   THIS COURT DISMISSES PLAINTIFF'S FIRST AMENDED
     COMPLAINT.............................................................................3

II.  FDA DENIES PLAINTIFF'S CITIZEN PETITION AND TAKES NO
     ACTION AGAINST BEIERSDORF.............................................3

III. THIS COURT DISMISSES PLAINTIFF'S SECOND AMENDED
     COMPLAINT.............................................................................4

IV.  THIS COURT PERMITS THE THIRD AMENDED COMPLAINT TO
     PROCEED, BUT NOTES THE APPROPRIATENESS OF AN EARLY
     MOTION FOR SUMAMRY JUDGMENT.....................................5

LEGAL STANDARD.......................................................................5

ARGUMENT..................................................................................6

I.   PLAINTIFF'S CLAIM – ALLEGING VIOLATION OF THE FDCA –
     IS PREEMPTED. .......................................................................6

     A.   Plaintiff is Suing for A Violation of the FDCA — Failure to Obtain
          Pre-Market Drug Approval. ...............................................7

     B.   Plaintiff's Claim Would Infringe FDA's Exclusive Authority Over
          the Pre-Market Approval Process. .....................................11

     C.   The FDA Has Primary Jurisdiction and Did Not Take Action..............12

II.  NONETHELESS, THE LOTION IS NOT A DRUG UNDER THE
     APPLICABLE REGULATORY FRAMEWORK. ...........................13

     A.   The FDCA Distinguishes Between Drugs and Cosmetics..............13

     B.   There Can Be No Genuine Dispute that the Lotion's Intended Use
          is As a Cosmetic..............................................................15

     C.   Case Law Shows the Lotion is Not a Drug...........................17

     D.   FDA Guidance Further Supports that the Lotion is a Cosmetic and
          Not a Drug......................................................................19

          1.   Informal FDA Guidance Shows that the Lotion's Skin
               Firming Representations are Cosmetic Claims. .............20

          2.   Other FDA Position Statements Also Show that the Lotion's
               Skin Firming Representations are Cosmetic Claims. .......21

i

3.    FDA Warning Letters Also Show that the Lotion's Skin Firming Representations are Not Drug Claims. ...........................23

E.    Beiersdorf Must Be Able to Reasonably Rely on FDA Guidance and Applicable Case Law.........................................................24

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Anthony v. Pharmavite*,
    2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ...............................................................12

*Borchenko v. L'Oreal USA, Inc.*,
    389 F. Supp. 3d 769 (C.D. Cal. 2019) ............................................................. *passim*

*Brinkerhoff v. L'Oreal USA, Inc.*,
    2019 WL 5067212 (S.D. Cal. Oct. 8, 2019) .............................................................12

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ......................................................................................... *passim*

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ......................................................................................................6

*Christensen v. Harris Cty.*,
    529 U.S. 576 (2000) ....................................................................................................20

*Dachauer v. NBTY, Inc.*,
    913 F.3d 844 (9th Cir. 2019) ......................................................................................12

*Elkind v. Revlon Consumer Prod. Corp.*,
    2015 WL 2344134 (E.D.N.Y. May 14, 2015) .............................................................9

*F.C.C. v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ....................................................................................................25

*FTC v. Pantron I Corp.*,
    33 F.3d 1088 (9th Cir. 1994) ........................................................................12, 14, 18

*Greenberg v. Target Corp.*,
    2019 WL 4182729 (N.D. Cal. Aug. 29, 2019) ..........................................................12

*Heejoon Chung v. U.S. Bank N.A.*,
    250 F. Supp. 3d 658 (D. Haw. 2017) .........................................................................17

*In re Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008) ..............................................................................................11

*In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*,
    623 F.3d 1200 (8th Cir. 2010) ......................................................................................7

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) ....................................................................................12

iii

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT                                                        CASE NO. 3:14-CV-2241-LAB-AGS

*Loreto v. Procter & Gamble Co.*,
    515 Fed. Appx. 576 (6th Cir. 2013)..................................................................9, 10

*Mformation Techs., Inc. v. Research in Motion, Ltd.*,
    830 F. Supp. 2d 815 (N.D. Cal. 2011) ..................................................................6

*Microsoft Corp. v. C.I.R.*,
    311 F.3d 1178 (9th Cir. 2002) ..........................................................................14

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997)..............................................................................8

*Pediamed Pharms. v. Breckenridge Pharm.*,
    419 F. Supp. 2d 715 (D. Md. 2006) ..................................................................11

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ..........................................................15, 16

*Perez v. Nidek Co.*,
    657 F. Supp. 2d 1156 (S.D. Cal. 2009), *aff'd*, 711 F.3d 1109 (9th Cir. 2013) ........10, 11

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) ....................................................................7, 8, 9, 11

*PhotoMedex, Inc. v. Irwin*,
    601 F.3d 919 (9th Cir. 2010) ............................................................................13

*Red v. Kraft*,
    2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)....................................................15

*Reid v. GMC Skin Care USA Inc.*,
    2016 WL 403497 (N.D.N.Y. Jan. 15, 2016)........................................................9

*Shuckett v. DialAmerica Mktg., Inc.*,
    No. 17CV2073-LAB (KSC), 2019 WL 3429184 (S.D. Cal. July 30, 2019) ..............5, 6

*Sierra Club v. Trump*,
    929 F.3d 670 (9th Cir. 2019) ............................................................................20

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)........................................................................................20

*Stengel v. Medtronic Inc.*,
    704 F.3d 1224 (9th Cir. 2013) (en banc) ........................................................7, 11

*U.S. v. An Article of Drug Consisting of 36 Boxes . . . "Line Away Temporary Wrinkle
    Smoother, Coty" ("Line Away")*,
    415 F.2d 369 (3d. Cir 1969)........................................................................12, 19

iv

*U.S. v. An Article . . . Helene Curtis Magic Secret ("Magic Secret"),*
  331 F. Supp. 912 (D. Md. 1971) ............................................................12, 14, 17, 18

*U.S. v. Article . . . "Sudden Change" ("Sudden Change"),*
  409 F.2d 734 (2d Cir. 1969) ....................................................................12, 14, 19

*U.S. v. Articles of Drug ... 5,906 Boxes,*
  745 F.2d 105 (1st Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985) ................................17

*U.S. v. Kasz Enters., Inc.,*
  855 F. Supp. 534 (D.R.I. 1994), *amended*, 862 F. Supp. 717 (D.R.I. 1994) ..........................15, 17

*U.S. v. Storage Spaces Designated Nos. 8 & 49 Located at 277 E. Douglas, Visalia, Cal.,*
  777 F.2d 1363 (9th Cir. 1985) ................................................................15

*U.S. v. Williams,*
  553 U.S. 285 (2008) ..........................................................................14

*Upjohn Co. v. Kessler,*
  938 F. Supp. 439 (W.D. Mich. 1996) ............................................................19, 20

*Videtto v. Kellogg USA,*
  2009 WL 1439086 (E.D. Cal., May 21, 2009) ......................................................15

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Svc.,*
  139 S. Ct. 361 (2018) ........................................................................16

**Statutes**

5 U.S.C. § 552(a)(2)(d) ........................................................................23

21 U.S.C. § 321(i) ........................................................................14, 16

21 U.S.C. § 321(g)(1) ........................................................................14

21 U.S.C. § 321(g)(1)(C) ................................................................13, 14, 21, 24

21 U.S.C. § 336 ....................................................................... *passim*

21 U.S.C. § 337 ....................................................................1, 7, 8, 9

21 U.S.C. § 355 ........................................................................10, 14

21 U.S.C. § 371 ........................................................................20, 25

21 U.S.C. § 379r ..............................................................................10

21 U.S.C. § 393 ........................................................................20, 25

Food, Drug, and Cosmetic Act ("FDCA") ......................................................... *passim*

Health & Safety Code § 111550 .................................................................................................... 10

**Other Authorities**

21 C.F.R. § 10.115 ................................................................................................................... 20

21 C.F.R. § 201.66 ..................................................................................................................... 6

21 C.F.R. § 201.128 ................................................................................................................ 15

64 Fed. Reg. 27666 (May 21, 1999) ....................................................................................... 21

127 A.L.R. Fed. 141 ................................................................................................................ 14

Fed. R. Civ. P. 56(a) ................................................................................................................. 5

Senate Report No. 493, 73d Cong. 2d Sess. (1934) ............................................................... 15

Plaintiff Stacie Somers alleges that she purchased two $10 bottles of a body lotion from Amazon.com, which she now claims is an illegally sold drug. The basis for her allegation is that the lotion's label uses "skin firming representations," which she says makes the product a drug, subject to the pre-approval requirements of the Food, Drug, and Cosmetic Act ("FDCA"). She is wrong, for several reasons.

First, her claim to privately enforce the federal drug pre-market approval process is preempted. The FDCA provides that it can only be enforced by the government, 21 U.S.C. § 337, and Congress placed discretionary enforcement authority with the Food and Drug Administration ("FDA"), 21 U.S.C. § 336, as the Supreme Court made clear in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001). Plaintiff's attempt to act as the FDA's private Attorney General is thus preempted.

Second, there is no genuine dispute that the lotion is a cosmetic, and not a drug. The undisputed material facts show that Beiersdorf, Inc. intended the product to be a cosmetic, and that is how consumers, including Plaintiff herself, understood it. Plaintiff's theory — that a mere skin-firming claim transforms a moisturizing lotion into a drug — is at odds with FDA guidance, relevant case law, and common sense. The Court should grant Beiersdorf, Inc.'s motion for summary judgment.

## FACTUAL BACKGROUND

Beiersdorf Inc. ("Beiersdorf") is an affiliate of Beiersdorf AG, an international "cosmetics company" based in Germany that has operated for over 130 years. Through retailers, Beiersdorf sells a variety of products. One of Beiersdorf's premier brands is NIVEA, the "world's No. 1 skin care brand."[1] More than 100 years ago, the company began selling NIVEA Crème, a "cosmetic skin cream."[2] As Plaintiff herself

---

[1] *About Us*, BEIERSDORFUSA.COM, https://www.beiersdorfusa.com/about-us/our-profile/at-a-glance (last visited Nov. 23, 2019), Request for Judicial Notice ("RJN"), Ex. A.

[2] *About Us*, NIVEAUSA.COM, https://www.niveausa.com/about-us/nivea-history (last visited Nov. 23, 2019), RJN Ex. B.

1

recognized in her Opposition to Beiersdorf's Motion to Dismiss, the NIVEA Crème is a cosmetic lotion and is NIVEA's "core product." [Dkt. 65] at 6 n.4. NIVEA remains one of Beiersdorf's most recognized brands. Among NIVEA's current products is a lotion called the NIVEA Skin Firming Hydration Body Lotion (the "Lotion"), which is the subject of this lawsuit.

The Lotion is sold in the cosmetics aisle at various retailers along with other cosmetics and beauty products, and is also sold at select outlets online. On Amazon's website, it is available under the following tabs: "Beauty & Personal Care > Skin Care > Body > Moisturizers > Lotions."[3] By contrast, common drugs such as Advil appear under the "Health, Household & Baby Care > Health & Personal Care" tab.[4]

On the front of the Lotion is the brand logo for the NIVEA brand. Underneath that, the label says "Skin Firming Hydration Body Lotion." TAC [Dkt. 87] ¶ 9; Joint Statement of Undisputed Facts ¶ 2. The front label identified in the TAC further says "Co-enzyme Q10 & Hydra IQ Deep and Long Lasting Moisture." TAC [Dkt. 87] ¶ 9; [Dkt. 88] Ex. A; Joint Statement of Undisputed Facts ¶ 2. The back label repeats "Skin Firming Hydration" and adds "•Proven to firm and tighten skin's surface in as little as two weeks"; and "•For softer, smoother, more toned skin." TAC [Dkt. 87] ¶ 10; Joint Statement of Undisputed Facts ¶ 3.The back label identified in the TAC further states "with Co-Enzyme Q10 Complex and HYDRA IQ Technology"; and "HYDRA IQ Technology supports skin's own hydration network to unleash deep, non-stop moisture that lasts more than 24 hours." TAC [Dkt. 87] ¶ 10; Joint Statement of Undisputed Facts ¶ 3. The back label also says "To Use: Smooth lotion over body

---

[3] *Nivea Skin Firming Hydration Lotion*, AMAZON.COM,https://www.amazon.com/NIVEA-Firming-Hydration-Lotion-Ounce/dp/B00DG8F0IA (last visited Nov. 24, 2019), RJN Ex. C.
[4] *Advil*, AMAZON.COM, https://www.amazon.com/dp/B0006SW71G/ref=cmswemrmtdpUhkI1DbHCZPMT4 (last visited Nov. 24, 2019), RJN Ex. D.

daily" and contains an ingredient list.[5]

Plaintiff alleges that she purchased the Lotion from Amazon.com in November 2016. She concedes the Lotion is a cosmetic by alleging that if she had known it was also "an illegal and misbranded drug, she would not have purchased it." *Id.* ¶ 7. Plaintiff claims that she "suffered injury in fact and lost money" as a result. *Id.*

## PROCEDURAL BACKGROUND

### I.     THIS COURT DISMISSES PLAINTIFF'S FIRST AMENDED COMPLAINT.

Plaintiff's original complaint (the First Amended Complaint) made two claims: (1) the Lotion's skin-firming representations were false and misleading; and (2) the Lotion is a drug, which cannot be sold without an FDA-approved New Drug Application. [Dkt. 19] ¶¶ 27-38, 65-77, 56-64. On Beiersdorf's motion [Dkt. 22], the Court dismissed the first claim because it was based on an impermissible "lack of substantiation" theory. [Dkt. 34] at 4-5. The Court granted Plaintiff leave to re-plead that claim, but she chose not to do so. [Dkt. 34] at 9. On Plaintiff's second theory, the Court held that the FDA had primary jurisdiction, *id.* at 7, and stayed the case to allow Plaintiff an opportunity to seek relief from the FDA.

### II.    FDA DENIES PLAINTIFF'S CITIZEN PETITION AND TAKES NO ACTION AGAINST BEIERSDORF.

Plaintiff's counsel filed a "Citizen Petition" with the FDA on September 16, 2015, asking it to (1) take action by sending a warning letter to Beiersdorf that the Lotion is an unapproved new drug, or, (2) inform Plaintiff that it did not intend to take any action regarding the Lotion. [Dkt. 37]. On March 14, 2016, the FDA chose the latter. It denied the Citizen Petition, stating that it did "not intend to take action regarding Nivea CoQ10." [Dkt. 37, 37-1]. The FDA explained that citizen petitions

---

[5] Pictures of the front and back of the Lotion label can be found in the Joint Statement of Undisputed Facts filed concurrently with this motion.

were helpful for it to identify violations of the laws it enforces, but that enforcement action is decided on a case-by-case basis and is within the FDA's discretion. *Id.* Because the FDA declined to take any action, this Court lifted the stay and allowed Plaintiff to file her Second Amended Complaint ("SAC"). [Dkt. 45]. To date, FDA has taken no action as to the Lotion. *See* [Dkt. 70] at 5 n.3.[6]

## III. THIS COURT DISMISSES PLAINTIFF'S SECOND AMENDED COMPLAINT.

Plaintiff's SAC again pled that the Lotion is an unapproved drug sold in violation of the California Unfair Competition Law's ("UCL") "unlawful" prong. SAC [Dkt. 46] ¶¶ 28-36. The sale of the Lotion was unlawful, she alleged, because Beiersdorf violated the federal FDCA and California's Sherman Law by selling the Lotion without FDA drug approval. *Id.* Plaintiff again alleged that she would not have purchased if she knew it was also an "illegal and misbranded drug." *Id.* ¶ 7. She sought restitution for a putative California class of consumers. *Id.* ¶¶ 21, 33-34.

Beiersdorf moved to dismiss the SAC because Plaintiff had not plausibly shown the Lotion was a drug. [Dkt. 47]. Although the Court granted Beiersdorf's motion, it did so on different grounds: that Plaintiff had failed to plausibly allege the causation or reliance elements necessary to establish standing and had failed to allege the minimum amount in controversy under the Class Action Fairness Act. [Dkt. 54]. The Ninth Circuit reversed and remanded. [Dkt. 52-1].

---

[6] *See also* FDA, *Warning Letters Address Drug Claims Made for Products Marketed as Cosmetics*, *available at* https://www.fda.gov/cosmetics/warning-letters-related-cosmetics/warning-letters-address-drug-claims-made-products-marketed-cosmetics (last visited Nov. 24, 2019), RJN Ex. E.

## IV. THIS COURT PERMITS THE THIRD AMENDED COMPLAINT TO PROCEED, BUT NOTES THE APPROPRIATENESS OF AN EARLY MOTION FOR SUMAMRY JUDGMENT.

After the Ninth Circuit remand, Beiersdorf renewed its motion to dismiss the SAC on the grounds that Plaintiff had failed to state a plausible claim to relief. [Dkt. 62-1]. On May 21, 2019, the Court denied Beiersdorf's motion because Plaintiff cleared "the relatively low bar of plausibility." [Dkt. 70]. The Court stressed that its decision was "a limited holding," which did not decide the Lotion is a drug. *Id.* at 5. Rather, the Court explained that the Lotion classification question was a "factual question not suitable for resolution at this stage of the litigation." *Id.* The Court further noted that, "[g]iven the straightforward facts and questions of law presented, this might be the rare case in which a summary judgment motion would be appropriate before addressing class certification." *Id.* (citation omitted). In light of the Court's Order, the Parties agreed to brief summary judgment on the basis of publicly available facts. [Dkt. 90] at 1.

On October 9, 2019, Plaintiff filed her Third Amended Complaint ("TAC").[7] The TAC is in all respects identical to the SAC except that it substitutes the name of the lead Plaintiff and facts specific to Plaintiff's purchase of the product. [Dkt. 96-98].

## LEGAL STANDARD

"Summary judgment is appropriate where 'there is no genuine issue as to any material fact.'" *Shuckett v. DialAmerica Mktg., Inc.*, No. 17CV2073-LAB (KSC), 2019 WL 3429184, at *1 (S.D. Cal. July 30, 2019) (quoting Fed. R. Civ. P. 56(a)). "The purpose of summary judgment is to 'isolate and dispose of factually unsupported

---

[7] When the Parties met and conferred regarding the Joint Statement of Undisputed Facts filed concurrently with this motion, Plaintiff raised for the first time that the Lotion labels depicted in the TAC are different than the ones on the Lotion she purchased. Under either set of labels, summary judgment in favor of Beiersdorf is appropriate for the reasons discussed below.

claims or defenses.'" *Mformation Techs., Inc. v. Research in Motion, Ltd.*, 830 F. Supp. 2d 815, 822 (N.D. Cal. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). A party moving for summary judgment meets its burden by showing the absence of a material factual issue for trial. *Shuckett*, 2019 WL 3429184, at *1 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the burden shifts to the non-moving party to show why the Court should not grant summary judgment. *Id.*

## ARGUMENT

This Court should grant summary judgment to Beiersdorf for at least two reasons. First, Plaintiff's claim seeks to privately enforce the FDCA, which is properly committed to the FDA and its administrative procedures, thus rendering Plaintiff's allegations impliedly preempted. Second, even if the issue were not committed to the FDA, there is no genuine dispute of fact that the Lotion is a cosmetic and not a drug.

## I. PLAINTIFF'S CLAIM – ALLEGING VIOLATION OF THE FDCA – IS PREEMPTED.

At the heart of Plaintiff's theory is a claim that the Lotion violates the FDCA. Specifically, Plaintiff asserts that the FDCA requires pre-market approval of drugs by the FDA through the New Drug Application ("NDA") process, and because Beiersdorf did not obtain pre-market approval for the Lotion, it "has violated the FDCA." TAC [Dkt. 87] ¶¶ 18-19, 28-36.[8] Solely because of this purported FDCA violation — *i.e.*, the alleged failure to "subject[] the Product to FDA NDA process to obtain FDA approval" (which is only required if the product is a drug) — Plaintiff claims the Lotion violates California's Sherman Law. TAC [Dkt. 87] ¶ 19.

---

[8] Plaintiff also has a second theory, which is that Beiersdorf failed to list the Lotion ingredients in the proper order. TAC ¶ 31. However, the federal ingredient regulation she cites for this proposition applies only if the Lotion is a drug, and thus, this theory fails for the same reasons as her first theory. *See* 21 C.F.R. § 201.66.

Plaintiffs' state law claim is an impermissible private attempt to police purported violations of FDCA pre-market approval requirements, and is therefore preempted. Congress expressly and exclusively gave the power to enforce the FDCA to the federal government under 21 U.S.C. § 337 ("all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States"); *see also Buckman*, 531 U.S. at 349 n.4 (there is "no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance" with FDCA requirements). As a result of this express statutory provision, state law claims that exist "solely by virtue of the FDCA" are preempted. *Id.* at 353. Put differently, any claim that conduct is unlawful "*because* the conduct violates the FDCA" is "impliedly preempted under *Buckman*." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)).

To be sure, some state law claims remain available — namely "in cases dealing with violations of the [FDCA] outside the pre-market approval process," a plaintiff may bring "state-law causes of action for damages in which the state-law duty 'parallels' the federal-law duty" under the FDCA. *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1230-31, 1235 (9th Cir. 2013) (en banc). But such claims exist in a "narrow gap" of federal preemption: "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez*, 711 F.3d at 1120 (quoting *Medtronic*, 623 F.3d at 1204). Plaintiffs' claim here does not fit in that narrow gap and is thus preempted.

## A. Plaintiff is Suing for A Violation of the FDCA — Failure to Obtain Pre-Market Drug Approval.

Although Plaintiff purports to sue for violation of the Sherman Law, it is plain on the face of the TAC that her sole theory is that Beiersdorf's conduct violates the

FDCA's pre-market drug approval process, a comprehensive scheme that empowers FDA both to make decisions about approving new drugs and to have enforcement discretion for non-compliance. *See* 21 U.S.C. §§ 336, 337.[9]

Indeed, Plaintiff's TAC and motions have repeatedly referenced federal law, *see* TAC [Dkt. 87] ¶¶ 11-13, 18, 31 (citing 21 U.S.C. §§ 301, 321, 355, 359), regulations, *see id.* ¶ 20, and even FDA warning letters and informal guidance, *see id.* ¶ 16. Plaintiff's only explanation for why sale of the Lotion supposedly violated the Sherman Law is *because* sale of the Lotion supposedly violated the FDCA: "By selling NIVEA CoQ10 Lotion without subjecting the Product to the FDA NDA process to obtain FDA approval to sell this drug, Defendant has violated the FDCA and parallel Sherman FD&C." *Id.* ¶ 19; *see also id.* ¶ 31 ("Defendant engaged in illegal conduct" by marketing the Lotion "without obtaining required FDA approval through the FDA NDA process"). Plaintiff fails to raise any separate or distinct state law drug process that should have been followed; she refers only to the FDA NDA process.

Thus, Plaintiff's TAC makes clear that her "true goal is to privately enforce alleged violations of the FDCA." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (affirming summary judgment for defendant where plaintiff's claims amounted to "insistence that [defendant's] products are sold without proper FDA approval"); *see also Buckman*, 531 U.S. at 352-53 (claims that arose "solely from the violation of FDCA requirements" were preempted); *Perez*, 711 F.3d 1119-20 (same); *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 774 (C.D. Cal. 2019) ("Plaintiff's UCL claim is impliedly preempted by federal law because it exists solely by virtue of the FDCA and [ ] references the FDCA, seeks to enforce provisions of the FDCA, and conflicts with the FDCA discretionary enforcement process."). Plaintiff's

---

[9] *See also, e.g.*, *Buckman*, 531 U.S. at 348-50 (explaining the comprehensive scheme allows the FDA the flexibility to pursue difficult and competing objectives and to use its statutorily required judgment).

claim thus does not squeeze through the "narrow gap" the Ninth Circuit identified in *Perez*, but instead is "impliedly preempted under *Buckman*." 711 F.3d at 1120.

Other courts have found similar claims to be preempted. In *Borchenko*, a nearly identical case brought by the same counsel who brought this case, the court considered an identical UCL "unlawful" prong claim for failure to submit a lotion through the NDA process. The *Borchenko* court explained that the plaintiff's "UCL claim is impliedly preempted by federal law because it exists solely by virtue of the FDCA." 389 F. Supp. 3d at 774. The plaintiff was suing "because the conduct violates the FDCA," and the claim thus was preempted. *Id.*

Additionally, in *Elkind v. Revlon Consumer Prod. Corp.*, the court found plaintiff's mislabeling claims preempted, explaining that Plaintiffs alleged that the products violate the FDCA, and "prosecuting that violation lies squarely within the province of the FDA." 2015 WL 2344134, at *9 (E.D.N.Y. May 14, 2015);[10] *see also Reid v. GMC Skin Care USA Inc.*, 2016 WL 403497, at *10 (N.D.N.Y. Jan. 15, 2016) (dismissing as preempted allegations that products were unapproved new drugs because such claims "allege[d] violations of the FDCA," for which there is no private right of action) (citing 21 U.S.C. § 337(a), *Buckman*, and *Elkind*).

Plaintiff refers to California's Sherman Law in her TAC to attempt to squeeze through the narrow gap in preemption law, but the Sherman Law does not help her here. The Sherman Law refers to and applies the FDCA pre-market drug approval process, but it does not create an independent, state law parallel drug approval process that can be separately enforced *without the federal process*.[11] Specifically, Plaintiff's

---

[10] The "mislabeling claims" in *Elkind* concerned the allegations that the phrases "Age Defying with DNA Advantage" would "help protect the skin's DNA to fight signs of aging" were "unlawful" because the phrases rendered the products "over-the-counter drugs," did not comply with FDCA drug labeling requirements, and violated state laws prohibiting the unlawful sale of products. *Id.* at *2.

[11] *See Loreto v. Procter & Gamble Co.*, 515 Fed. Appx. 576, 579 (6th Cir. 2013) ("The [FDCA's] public enforcement mechanism is thwarted if savvy plaintiffs can

9

TAC relies on Health & Safety Code § 111550, the section of the Sherman Law prohibiting the sale of "new drugs";[12] however, that section is based on whether the product has received federal pre-market approval.[13] This is precisely why, when the Court stayed Plaintiff's case to allow her to seek regulatory relief first, she went to the FDA and not the California Department of Public Health.

Moreover, in the course of this litigation, Plaintiff repeatedly cited FDA warning letters and informal guidance, making clear that the FDCA, and the FDA's authority under it, is at the heart of her claim. *See, e.g.*, TAC [Dkt. 87] ¶ 16. For example, on appeal, Plaintiff explained that her UCL claim was based on alleged violations of the FDCA and the Sherman Law, which "[b]oth prohibit non-FDA approved drug labeling claims." [Appl. Dkt. 5] at 3. And in her response to Beiersdorf's motion to dismiss the SAC, Plaintiff focused at length on the FDCA, FDA warning letters, and FDA guidance. *See* [Dkt. 65] at 10-14.

Accordingly, Plaintiff's sole theory — regardless of her citations to state law — is that the sale of the Lotion is unlawful because of the absence of federal pre-market approval. She cites state law, but that claim turns on compliance with the FDCA. Thus, Plaintiff's claim is preempted in full. *See Borchenko*, 389 F. Supp. 3d at 773 ("Moreover, because the Sherman Law references and incorporates the FDCA, this Court cannot grant any relief to Plaintiff without referring to and applying provisions of the FDCA."); *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1168 n.6 (S.D. Cal. 2009),

---

label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA.").

[12] Cal. Health & Safety Code § 111550 states that: "No person shall sell, deliver, or give away any new drug or new device unless it [is] . . . (1) A new drug, and a new drug application has been approved for it and that approval has not been withdrawn, terminated, or suspended under Section 505 of the federal act (21 U.S.C. Sec 355)."

[13] Subsection (b) purports to create a California licensing regime for new drugs, but this regime is expressly preempted because it is not identical to federal law. *See* 21 U.S.C. § 379r (preempting any state law regulating nonprescription drugs "different from or in addition to, or that is otherwise not identical with" the FDCA).

*aff'd*, 711 F.3d 1109 (9th Cir. 2013) ("[E]ven though Plaintiffs cite to violations of California law, this cause of action would be dismissed because it seeks to privately enforce violations of the FDCA and its regulations."); *Stengel*, 704 F.3d at 1230 ("[T]he state law claim [Plaintiff] assert[s] [ ] 'exists *solely* by virtue' of the federal enactments because state law traditionally had no role to play in policing 'the relationship between a federal agency and the entity it regulates.'").

Cases finding that claims were not preempted have all involved state laws that established independent requirements and did not "require referring to, or applying, the FDCA." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1183 (2008); [14] *see also Stengel*, 704 F.3d at 1223 (finding no preemption because the claim at issue was "independent of the FDA's pre-market approval process."); *Perez*, 657 F. Supp. 2d at 1169 (claims "are actionable if they do not depend on a determination by the court whether the FDCA has been violated"). Here, Plaintiff's sole claim asks the Court to make determinations about the FDCA's definition of "drug" and the federal pre-market drug approval process. This Court "cannot grant any relief to Plaintiff without referring to and applying provisions of the FDCA." *Borchenko*, 389 F. Supp. 3d at 773. Her attempt to enforce the FDCA through artful UCL pleading is preempted.

### B. Plaintiff's Claim Would Infringe FDA's Exclusive Authority Over the Pre-Market Approval Process.

Plaintiff's claim is also preempted because it seeks to usurp FDA discretion in the pre-market drug approval process, which would violate Congress's intent and disrupt public policy. Congress expressly gave FDA discretion about remedies for a

---

[14] Moreover, *Farm Raised Salmon* was decided before *Perez*, and because *Perez* is published Ninth Circuit precedent, *Perez* is binding on this Court. *Borchenko*, 389 F. Supp. 3d at 773 ("[T]his Court is bound by Ninth Circuit precedent, including *Perez*, and not by *Farm Raised Salmon*."). Additionally, *Farm Raised Salmon* did not address FDA prosecutorial discretion under 21 U.S.C. § 336, and distinguished the holding in *Pediamed Pharms. v. Breckenridge Pharm.*, 419 F. Supp. 2d 715 (D. Md. 2006), that claims that a product was illegally sold without a FDA NDA were preempted.

violation. *See* 21 U.S.C. § 336; *Buckman*, 531 U.S. at 342 ("This flexibility is a critical component of the statutory and regulatory framework under which the FDA pursues difficult (and often competing) objectives.").

To date, courts have overwhelmingly respected this delegation: of the cases that do decide the cosmetic versus drug question, nearly every one of those cases have either been brought by, or seek to appeal an initial decision by, the Government or FDA. *E.g.*, *U.S. v. Article . . . "Sudden Change"* ("*Sudden Change*"), 409 F.2d 734 (2d Cir. 1969); *U.S. v. An Article . . . Helene Curtis Magic Secret ("Magic Secret")*, 331 F. Supp. 912 (D. Md. 1971); *FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994); *U.S. v. An Article of Drug Consisting of 36 Boxes . . . "Line Away Temporary Wrinkle Smoother, Coty" ("Line Away")*, 415 F.2d 369 (3d. Cir 1969).

Private plaintiffs cannot unilaterally become the enforcement authority for the FDA because that would conflict with 21 U.S.C. § 336. *See, e.g.*, *Borchenko*, 389 F. Supp. 3d 769 (same counsel bringing identical FDCA claims under UCL); *Brinkerhoff v. L'Oreal USA, Inc.*, 2019 WL 5067212, at *5 (S.D. Cal. Oct. 8, 2019) (same counsel bringing identical FDCA claims under UCL).[15] Private plaintiffs undoubtedly have different incentives, may have different perspectives than the FDA, and most importantly were not entrusted by Congress to enforce the FDCA. Allowing Plaintiff to continue with this case will open the door to an avalanche of similar private prosecutions of alleged noncompliance with the FDCA.

### C. The FDA Has Primary Jurisdiction and Did Not Take Action.

As this Court correctly concluded, the FDA has primary jurisdiction over the matter. [Dkt. 34] at 6-8. The FDA has exercised its primary jurisdiction by declining to act for the seven-plus years that the Lotion has been on the market. *See* [Dkt. 70] at

---

[15] *See also Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) (same counsel bringing FDCA enforcement claims); *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 846 (9th Cir. 2019) (same); *Greenberg v. Target Corp.*, 2019 WL 4182729 (N.D. Cal. Aug. 29, 2019) (same); *Anthony v. Pharmavite*, 2019 WL 109446, at *4 (N.D. Cal. Jan. 4, 2019) (same).

12

5 n.3. The FDA's silence is compelling because there can be no question that FDA has known about the Lotion for at least four years. The September 2015 Citizen's Petition outlined Plaintiff's case. The FDA rejected it, stating these matters "are decided on a case-by-case basis and are within the discretion of the agency." [Dkt. 37, 37-1]. Since that time, the FDA has not issued any written warning, indicating through its silence that the Lotion is a cosmetic not requiring an NDA. The Court should not entertain Plaintiff's contrary claim any further. *See PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) (a claim may not be pursued where "the claim would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation").

## II. NONETHELESS, THE LOTION IS NOT A DRUG UNDER THE APPLICABLE REGULATORY FRAMEWORK.

Even if the claims were not preempted, the Lotion is a cosmetic — not a drug. First, the Lotion is not a drug; it was not "intended to affect the body's structure or function" as that language is interpreted and applied by FDA. Second, FDA has stated that moisturizing-based claims like those made on the Lotion, even ones that use the terms "smoothing," "tightening," or "firming," are cosmetic claims. Finally, FDA's inaction shows its position that the Lotion is not a drug. Although the Court concluded that Plaintiff's allegations were sufficient to state "a *plausible* claim that the lotion is a drug," [Dkt. 70] at 5, Plaintiff must do more at summary judgment. At this stage, she must offer *evidence* demonstrating that the Lotion is a drug, but she cannot do so.

### A. The FDCA Distinguishes Between Drugs and Cosmetics.

The FDCA defines "drug" to include "articles (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1)(C). It defines "cosmetic" as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the

appearance." *Id.* § 321(i). Sellers must seek approval from the FDA before selling drugs. *See id.* § 355.

In deciding whether a product is a drug or cosmetic, courts look at the "intended use" of the product. To be considered a drug, the intended use of the product must be understood by reasonable consumers to represent that it "will affect the structure of the body in some medical- or drug-type fashion, i.e., in some way other than merely 'altering the appearance.'" *Sudden Change,* 409 F.2d at 742; *Magic Secret*, 331 F. Supp. at 917; *cf.* 127 A.L.R. Fed. 141 at § 13 (characterizing two products found to be drugs as displaying "strong claims of physiological improvement"); *see also Pantron*, 33 F. 3d at 1105 (citing *Sudden Change* and *Magic Secret*).

Further context about classifying products as drugs under the "intended use" standard is available from the text of 21 U.S.C. § 321(g)(1) (the "definitions" section of the FDCA) itself. This case focuses on subsection (C) of the statute, but two other subsections offer clarity about the meaning of subsection (C). The FDCA defines "drug," in relevant part, as follows:

> (A) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals.

21 U.S.C. § 321(g)(1). The terms of subsection (C) are not defined, but they must be understood as carrying a similar context and connotation as subsections (A) and (B). *U.S. v. Williams*, 553 U.S. 285, 294 (2008); *Microsoft Corp. v. C.I.R.*, 311 F.3d 1178, 1184 (9th Cir. 2002) ("The doctrine of *noscitur a sociis* counsels that words should be understood by the company they keep."). Subsections (A) and (B) carry medical connotations, and thus, subsection (C) must be read in the same context.

The intended use of the product is also analyzed by looking to the "vendor's

*objective* intent," *U.S. v. Kasz Enters., Inc.*, 855 F. Supp. 534, 539 (D.R.I. 1994), *amended*, 862 F. Supp. 717 (D.R.I. 1994) (citing 21 C.F.R. § 201.128), which "may be derived or inferred from labeling, promotional material, advertising, or any other relevant source." *U.S. v. Storage Spaces Designated Nos. 8 & 49 Located at 277 E. Douglas, Visalia, Cal.*, 777 F.2d 1363, 1366 (9th Cir. 1985). The FDA's Cosmetic Labeling Guide further explains that the intended use looks to "the statements made on a product's label or labeling." *See* Senate Report No. 493, 73d Cong. 2d Sess. (1934); FDA, *Cosmetics Labeling Guide*, *available at* https://www.fda.gov/cosmetics/cosmetics-labeling-regulations/cosmetics-labeling-guide (last visited Nov. 24, 2019), RJN Ex. F.

**B.    There Can Be No Genuine Dispute that the Lotion's Intended Use is As a Cosmetic.**

As the Court noted, the "straightforward facts and questions of law presented," make summary judgment appropriate at this time. [Dkt. 70] at 5. There is no dispute that reasonable consumers understood the product to be a cosmetic and that Beiersdorf, the vendor, intended the Lotion to be used as a cosmetic.

First, the product at issue is a hydrating lotion, and reasonable consumers know that body lotions are cosmetics — not drugs. Courts do not check their common sense at the door in interpreting labels and have routinely determined as a matter of law reasonable interpretations of label statements. *See Videtto v. Kellogg USA*, 2009 WL 1439086 (E.D. Cal., May 21, 2009) (reasonable consumers do not believe that "Froot Loops" cereal contains "real, nutritious fruit"); *Red v. Kraft*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (rejecting that consumers could believe crackers were "made with real vegetables" because reasonable consumers "would be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables"); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (reasonable consumers know that pasta does "not spring fully formed from Ravioli trees and Tortellini

15

Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment                                                     Case No. 3:14-cv-2241-LAB-AGS

bushes"). Hydration is a quintessential cosmetic claim. Reasonable consumers would understand a hydrating "body lotion" as being applied for "beautifying or altering the appearance" of the skin, 21 U.S.C. § 321(i) (if they know or care about federal definitions at all), particularly where the product is by a well-known cosmetics brand, speaks of hydration benefits, the instructions say "smooth lotion over body daily," and the product has no "drug facts" box.

Second, a commonsense reading of the label shows that the Lotion's skin firming representations are cosmetic claims. The label language is: "Skin Firming Hydration Body Lotion." "[A]djectives modify nouns," *see Weyerhaeuser Co. v. U.S. Fish & Wildlife Svc.*, 139 S. Ct. 361, 368 (2018), and thus, a reasonable consumer would understand "Skin Firming" (the adjective) to describe "Hydration" (the noun). In other words the skin-firming aspect happens *through* hydration.

This understanding is also borne out by the remainder of the Lotion label. Every "firming" or "tightening" claim on the label is *subordinate to* and *modifies* a claim of hydration. The first skin firming representation highlighted in TAC [Dkt. 87] ¶ 2 — that the Lotion "Improves Skin's Firmness in as little as two weeks" — appears in *smaller* font *immediately below* the phrases "Skin Firming Hydration," and "Body Lotion." The second skin firming representation highlighted in TAC ¶ 2 — that the Lotion is "Proven to firm and tighten skin's surface in as little as two weeks" — again appears in *smaller* font *immediately under* the words "NIVEA® Skin Firming Hydration." It also references the skin's "surface," which is a proper cosmetic claim about "the appearance" of skin. 21 U.S.C. § 321(i).

Third, Plaintiff herself concedes the Lotion is a cosmetic. TAC [Dkt. 98] ¶¶ 12, 17. She then alleges that, had she known it was a drug, she would not have bought it, *id.* ¶ 7, reflecting that even she must have understood the product to be making cosmetic claims. Because Plaintiff purports herself to be a representative of a class, her experience shows the Lotion was intended to be a cosmetic.

Fourth, the Court should not postpone this logical conclusion any further. In its order on Beiersdorf's Motion to Dismiss, this Court underlined Plaintiff had merely "clear[ed] the relatively low bar of plausibility," but that the question of whether the Lotion is a drug was a "factual question not suitable for resolution at this stage." [Dkt. 70] at 5. But the same cases the Court cited explain that where, as here, "there is no dispute concerning the wording and description of the labeling and other promotional materials or activities that relate to the products, [so] the legal conclusion to be drawn therefrom can and should be resolved on summary judgment." *Kasz Enters.*, 855 F. Supp. at 538; *see also U.S. v. Articles of Drug ... 5,906 Boxes*, 745 F.2d 105, 110-11 (1st Cir. 1984) (the conclusion to be drawn from undisputed labeling and promotional claims concerning drug status of product should be resolved on motion for summary judgment), *cert. denied*, 470 U.S. 1004 (1985). Here, Plaintiff's TAC allegations are confined to the Lotion label. In the entirety of this litigation, Plaintiff has never alleged that she relied on — or even viewed — anything other than the Lotion label. TAC [Dkt. 87] ¶¶ 9-10. She incorporated and attached the Lotion labels to the TAC, so no further discovery is needed and the matter is ready for resolution on summary judgment. *See Heejoon Chung v. U.S. Bank N.A.*, 250 F. Supp. 3d 658, 687 (D. Haw. 2017) ("The Court cannot address claims not pled in the complaint on a summary judgment motion," because the complaint must give the defendant "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'").

## C. Case Law Shows the Lotion is Not a Drug.

Case law further supports that even a reasonable consumer would interpret the Lotion to be a cosmetic — not a drug. Courts have already held that claims similar to those made here are cosmetic claims.

In *Magic Secret*, the court reviewed a product called Magic Secret making the following claims: "smoothes away wrinkles in minutes, keeps them away for hours,"

"dramatic power to smooth away crows feet, puffy under eye circles, laugh, frown, and throat lines in just minutes," "see how smooth and young looking your skin can become," "skin should respond fully to Magic Secret's dramatic action," "does indeed firm the skin to smoother, younger-looking loveliness," "astringent sensation . . . indicating that the lotion is gently firming and toning your skin," "tightening and moisturizing tired skin," and "skin quickly responds to Magic Secret's dramatic astringent activity." 331 F. Supp. at 915. These are claims about a physical effect, and yet the court found Magic Secret was not a drug because a "consumer would not be led . . . to believe that 'Magic Secret' would do other than alter their appearance." *Id.* at 917; *see also Pantron*, 33 F. 3d at 1105 (explaining that the *Magic Secret* product was not a drug because a consumer would interpret the advertisement to cause only a temporary, superficial change in appearance for a short period, not affect the structure or function of the body). Here, by comparison, Beiersdorf is alleged to have made only *one* of the claims made about Magic Secret. For the same reasons as in *Magic Secret*, a reasonable consumer would not believe the Lotion would do anything other than alter the appearance of skin.

The Ninth Circuit in *Pantron* contrasted hair re-growth claims against the cosmetic claims in *Magic Secret*, explaining that the former "representations that the product will cause the body to generate new hair in parts of the scalp where no hair currently exists," were "far more likely to be understood as affecting the structure or function of the body, and thus carrying 'drug connotations,' than are [*Magic Secret*'s] representations." 33 F. 3d at 1105 (citations omitted). The skin firming representations on the Lotion, like those in *Magic Secret*, simply do not claim to affect the structure or function of the body in the same physiological, drug-like way as the hair re-growth product in *Pantron*.

The only cases Plaintiff has relied on to date, including *Pantron*, involved representations suggesting physiological changes to the anatomical structure of the

body in a medical- or drug-type fashion.[16] For that reason, those cases, when compared to the Lotion label, only further support that the Lotion's moisturizing representations are cosmetic claims.

### D. FDA Guidance Further Supports that the Lotion is a Cosmetic and Not a Drug.

The commonsense application of the statute outlined above is bolstered by an arsenal of persuasive FDA guidance that consistently deems moisturizing and smoothing to be cosmetic claims. The Court previously granted the Parties' requests for judicial notice of several sources of FDA guidance and various FDA warning letters. [Dkt. 70 at 3 n.2]. But it did not apply that guidance because the Parties had not briefed why it was persuasive. *Id.* at 4-5. Beiersdorf addresses the Court's question here and it is ready for resolution.

Plaintiff's theory appears to be that altering the body in any way makes the product into a drug. But if this were correct, the definition of drug would subsume the definition of cosmetic: everything that is sprinkled, rubbed, or otherwise applied on the body would alter it by adding chemicals to its surface, and that would make every cosmetic a drug. That is clearly not what Congress intended.

This is why the FDA's guidance is important: to clarify the distinction between drugs and cosmetics.[17] While it is true that FDA guidance is not binding, the Supreme

---

[16] *See, e.g.*, *Line Away*, 415 F.2d at 371 (finding product to be a drug because representations indicated it was "therapeutic," having a physiological effect on the skin itself: explanation that the user will feel a tingling sensation when they put the product on, meaning "Line Away is at work — smoothing, firming, tightening" and it would "visibly smooth[] out fatigue lines, laugh lines, worry lines, frown lines, tiny age lines, and crows feet while *discouraging new lines from forming*") (emphasis added); *Sudden Change*, 409 F.2d at 738-42 (finding product to be a drug based on the following representations: "provide a *face lift* without surgery," and "smooth away crows feet, laugh and frown lines — even under-eye puffiness in minutes" and "keep [them] and 'that tired look' away for hours" (emphasis added)).

[17] "The FDA is the agency charged with implementing [the FDCA]. Its judgments as to what is required to ascertain the safety and efficacy of drugs fall squarely within the

19

Court has explained that FDA interpretations contained in such materials are "entitled to respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), to the extent that those interpretations have the "power to persuade." *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000). *Skidmore* deference operates like a sliding scale, "meaning the degree of deference [courts] give the agency's interpretation of a statute 'depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Sierra Club v. Trump*, 929 F.3d 670, 714 n.8 (9th Cir. 2019) (citations omitted). Because the FDA's guidance on this topic is well-reasoned, consistent, and thorough, it is highly persuasive here.

### 1. Informal FDA Guidance Shows that the Lotion's Skin Firming Representations are Cosmetic Claims.

The FDA's general policies for issuing guidance documents with public notice and comment are explained in 21 U.S.C. § 371 and 21 C.F.R. § 10.115. Both 21 U.S.C. § 371 and 21 C.F.R. § 10.115 state that the guidance "represent[s] the agency's current thinking" and that FDA employees may not deviate from the guidance "without appropriate justification and supervisory concurrence."

Plaintiff seems to think that any representation that can be read as affecting a change on the skin makes a product a drug. But FDA guidance consistently shows that the FDA views moisturizing, softening, and smoothing claims — which by nature also affect *some* aesthetic change in the skin — as cosmetic claims. For example, the FDA's *Guidance for Industry: Labeling for Cosmetics Containing Alpha Hydroxy Acids*, addressed Alpha Hydroxy Acids ("AHAs") "added to cosmetic products with the intention of achieving many different effects," and defined those effects as "includ[ing], for example, moisturizing, cleansing, softening, smoothing, and skin

---

ambit of the FDA's expertise and merit deference from [courts]." *Upjohn Co. v. Kessler*, 938 F. Supp. 439, 444 (W.D. Mich. 1996); *see also* 21 U.S.C. §§ 371, 393.

protection." *See* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-labeling-cosmetics-containing-alpha-hydroxy-acids (last visited Nov. 24, 2019), RJN Ex. G. The guidance refers to these products as cosmetics despite the existence of "softening," and "smoothing," claims. If Plaintiff's view were correct that any representation of change to the skin renders the product a drug, FDA would have said that these AHA products were drugs – not cosmetics.

Other informal FDA guidance documents similarly classify moisturizing and softening as cosmetic claims.[18] These sources were subject to notice and comment and are internally consistent and logical interpretations of 21 U.S.C. § 321(g)(1)(C). The totality of this guidance, then, is extremely persuasive to show that the FDA has consistently delineated moisturizing, softening, and smoothing claims to be cosmetic claims under 21 U.S.C. § 321(g)(1)(C).

### 2. Other FDA Position Statements Also Show that the Lotion's Skin Firming Representations are Cosmetic Claims.

Other informal FDA guidance and policy statements also show that the FDA would classify the Lotion as a cosmetic — not a drug. First, an FDA Public Affairs Specialist gave a presentation at the June 12, 2018 Beauty Industry West Update on Key FDA Regulatory Actions & Issues event, and her slide expressly stated that "firming," "tightening" and "hydrating" are, in her words, "Examples of Cosmetic"

---

[18] *See* FDA, "Sunscreen Drug Products for Over-The-Counter Human Use," 64 Fed. Reg. 27666, 27669 (May 21, 1999) (describing example of a "cosmetic effect[] on the skin" to be "moisturiz[ing] the skin"); FDA, Cosmetics Labeling Guide, RJN Ex. F (stating that "[i]f cosmetic claims, *e.g.*, moisturizing, deodorizing, skin softening etc., are made on a label, the product is a cosmetic").

claims:



**Examples of Cosmetic vs. Drug Claims**

| Cosmetic Claims | Drug Claims |
| --- | --- |
| • Cleansing | • Redness |
| • Moisturizing | • Anti-inflammatory |
| • Renewing | • Acne |
| • Rejuvenating | • Eczema |
| • Firming/Lifting | • Psoriasis |
| • Reducing puffiness | • Scars/Wounds |
| • Tightening | • Anti-septic/Anti-bacterial |
| • Hydrating | Anti-microbial |
| | • Blood/Muscle Circulation |

*See* RJN Ex. H. The FDA explains on its website that Public Affairs Specialists serve as "key links between the Agency and [its] constituents . . . They serve as FDA's community-based educators." FDA, *Public Affairs Specialists*, *available at* https://www.fda.gov/about-fda/contact-ora/fda-public-affairs-specialists (last visited Nov. 24, 2019), RJN Ex. I.

Second, on the FDA's *Wrinkle Treatments and Other Anti-aging Products* webpage, the FDA states that "[p]roducts intended to make people more attractive are generally cosmetics" and "moisturizing is a cosmetic claim," so if a product claims "to make lines and wrinkles less noticeable, simply by moisturizing the skin, it's a cosmetic." https://www.fda.gov/Cosmetics/ProductsIngredients/Products/ucm 388826.htm (last visited Nov. 24, 2019), RJN Ex. K. But if a product is intended to affect the structure or function of the skin by "remov[ing] wrinkles or increase[ing] the skin's production of collagen, it's a drug or a medical device." *Id.*

Similarly, FDA has explained that AHAs are cosmetics when they are marketed for "smoothing fine lines and surface wrinkles, improving skin texture and tone . . . and improving skin condition," but are considered drugs when they are marketed for "treating acne, removing scars, and lightening discolorations." FDA, *Alpha Hydroxy*

*Acids*, *available at* https://www.fda.gov/cosmetics/productsingredients/ingredients/ucm107940.htm (last visited Nov. 24, 2019), RJN Ex. L. According to these consistent explanations of the delineation between drugs and cosmetics, the Lotion's label falls squarely on the side of cosmetic claims.

### 3. FDA Warning Letters Also Show that the Lotion's Skin Firming Representations are Not Drug Claims.

By their nature, FDA warning letters are only issued in response to a regulatory violation. Here, it is persuasive, if not dispositive, that the FDA has declined to take any action or issue any warning letter regarding the Lotion in the seven-plus years it has been on the market, and more specifically, for the four-plus years since Plaintiff's 2015 Citizen Petition. The FDA's otherwise active issuance of warning letters to other manufacturers underscores that the FDA actively polices drugs that are improperly sold as cosmetics, but it has taken no action regarding the Lotion. *See* 5 U.S.C. § 552(a)(2)(d) (requiring that agencies make copies of all records "available for public inspection in an electronic format."); FDA, Regulatory Procedures Manual ("RPM") Sec. 4-1-13 (Apr. 2019), available at https://www.fda.gov/media/71878/download, RJN Ex. J (requiring that all FDA Warning Letters be posted on FDA's Warning Letters internet page for the public). The issued warning letters available on the FDA's website are also persuasive to show that the FDA has only considered products to be drugs when they use medical- or drug-like claims, which the Lotion does not make.

Warning letters are issued by the FDA to warn of possible enforcement, 21 U.S.C. §336, and are described by the FDA's RPM to be the FDA's "principal means of achieving prompt voluntary compliance," with the FDCA. Sec. 4-1-1 (Apr. 2019), *available at* https://www.fda.gov/media/71878/download, RJN Ex. J. Center concurrence is required to issue a warning letter and the RPM outlines the applicable procedure. *See id.* Sec. 4-1-4.

Relevant here, each warning letter that has been issued by the FDA challenging skin firming or anti-wrinkle representations goes far beyond the Lotion's skin firming representations. Plaintiff will surely cherry-pick representations from these warning letters to argue that the Lotion's representations should render it a drug. But that analysis is incomplete and misleads the Court. Each warning letter analyzes the relevant label *as a whole* and considers *all* representations made on the labels and in promotional materials, where applicable. Each product receiving a warning letter made a medical- or drug-like representation signaling a physiological change, which the Lotion does not make. The other representations on the products receiving warning letters cannot be read in isolation; they must be considered *with* the medical- or drug-like representation that converted the product to a drug.

Examples of medical- or drug- like representations in recent warning letters — representations unlike the Lotion's skin firming representations here — are attached as Attachment A. The Lotion claims (1) a mere alteration to skin appearance, that is (2) achieved through moisturizing and hydration. It does not purport to *reverse* wrinkles, *regenerate* hydroproteins, *reactivate* skin's repair process, *stimulate* collagen *production* or cell *reproduction*, *change* the *anatomy* of a wrinkle, or use any of the physiological terms that triggered the warning letters in Attachment A. Plaintiff to date has not and cannot cite to any FDA guidance or regulation concluding that appearance-based "tightening" or "firming" claims, in conjunction with hydration and moisturizing representations, such as ones made on the Lotion label, are sufficient by themselves to render a product a drug. Nor could she given the FDA's statements in its presentation at the June 12, 2018 Beauty Conference.

## E. Beiersdorf Must Be Able to Reasonably Rely on FDA Guidance and Applicable Case Law.

As a company specializing in cosmetic products, Beiersdorf has conformed its conduct to 21 U.S.C. § 321(g)(1)(C), relevant case law, official guidance posted to

FDA's official website, and the presentations given by FDA officials to guide the industry. Due process requires that citizens be put on notice of what conduct would violate the law. *Cf. F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012) (due process requires that "[r]egulated parties should know what is required of them so they may act accordingly," particularly where speech is involved). Subjecting a company to trial for following guidance from the agency tasked with administering the FDCA, 21 U.S.C. §§ 371, 393 (delegating FDCA enforcement authority and authority to issue guidance to FDA), violates due process and casts uncertainty on the entire industry. Summary judgment should be granted in Beiersdorf's favor.

## CONCLUSION

For the foregoing reasons, Beiersdorf requests that the Court grant its motion for summary judgment and hold that Plaintiff's claim is preempted, or that the Lotion is not a drug.

DATED: December 2, 2019

SIDLEY AUSTIN LLP

By: */s/ Alycia A. Degen*
Alycia A. Degen (SBN 211350)
adegen@sidley.com
Nisha Chandran (SBN 325345)
nchandran@sidley.com
SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Kara L. McCall (*Pro Hac Vice*)
kmccall@sidley.com
Elizabeth M. Chiarello (*Pro Hac Vice*)
echiarello@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendant Beiersdorf, Inc.*